NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

DIANE RUTH ZWAR, *Petitioner/Appellee,*

*v.*

BURL SWAIN, *Respondent/Appellant.*

No. 1 CA-CV 15-0016 FC
FILED 4-21-2016

Appeal from the Superior Court in Maricopa County
No. FC2004-090657
The Honorable Timothy J. Ryan, Judge

**AFFIRMED**

COUNSEL

Law Office of Amber L. Guymon, PLLC, Gilbert
By Amber L. Guymon
*Counsel for Petitioner/Appellee*

Berkshire Law Office, PLLC, Phoenix
By Keith Berkshire
and Maxwell Mahoney
*Counsel for Respondent/Appellant*

## MEMORANDUM DECISION

Presiding Judge Jon W. Thompson delivered the decision of the Court, in which Judge Maurice Portley and Judge Patricia K. Norris joined.

**T H O M P S O N**, Presiding Judge:

¶1        Appellant Burl Gene Swain (Burl) appeals from the trial court's decision modifying his spousal maintenance payment to his ex-wife, appellee Diane Ruth Zwar (Diane).  For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

¶2        Burl and Diane were married for thirty-three years until they divorced in 2005.  For a majority of the marriage Diane was a homemaker and Burl was employed.  Under the terms of the divorce decree, Burl was ordered to pay Diane $1500.00 per month in spousal maintenance indefinitely.  Subsequently, Burl stopped paying Diane the full amount of spousal maintenance.  Burl filed a petition to modify the spousal maintenance award, and the trial court held an evidentiary hearing in 2011. Following that hearing, the trial court (Judge Gass) denied Burl's request to modify the spousal maintenance award, finding that he failed to establish substantial and continuing changed circumstances to warrant modification of the award.[1]  The court awarded Diane her attorneys' fees and costs, finding that Burl had substantially more financial resources and that he had acted unreasonably in the litigation.

¶3        In 2012, Burl filed another petition to modify spousal maintenance.  After an evidentiary hearing, the trial court (Judge Hicks) found that Burl had failed to prove he was entitled to a modification.  In calculating Burl's income, the court included his Title 38 disability benefits. Burl filed a special action in this court seeking relief, and, finding that the trial court erred by considering the disability benefits in calculating the spousal maintenance award, we vacated the trial court's ruling and gave

---

[1] In 2011 Judge Gass found that Burl was not truthful about earning extra income as a handyman and that the evidence established he was "capable of earning significant income, which he does."

directions for further proceedings consistent with our opinion. *See Swain v. Hicks ex rel. Cty. of Mariciopa*, 235 Ariz. 209, 330 P.3d 966 (App. 2014).

¶4         After remand, the trial court (Judge Ryan) held another evidentiary hearing on the motion to modify spousal maintenance. Judge Ryan adopted findings made by Judge Hicks pertaining to Arizona Revised Statutes (A.R.S.) § 25-319(B) (2009), including, in relevant part: 1) the standard of living established during the marriage, 2) the duration of the marriage, 3) Diane's age, employment history, earning ability, and physical and emotional condition, 4) Diane's contribution to Burl's earning ability, 5) the extent to which Diane reduced her career opportunities for Burl's benefit, 6) Diane's financial resources, and 7) the time necessary for Diane to acquire sufficient education or training to enable her to find appropriate employment and whether such training was readily available. Judge Ryan made new findings concerning Burl's ability to meet his own needs while meeting Diane's needs and the comparative financial resources of both parties. Judge Ryan found that Burl's income not including the disability benefits included 1) social security payments of $1705.00, 2) a pension payment of $272.85, and 3) imputed income in the amount of $948.00 per month ($7.90 per hour minimum wage at thirty hours a week), for a total of $2925.85 per month. He further found that Diane had a monthly income of $1139.00 from social security and a small pension payment. Judge Ryan then subtracted Burl's $400.00 a month arrearage payment to Diane from his monthly income, finding that he had $2525.85 per month, and added $400.00 per month to Diane's income to account for the arrearage payment, finding that Diane had $1539.00 per month. Judge Ryan then reduced Burl's monthly spousal maintenance payment from $1500.00 to $493.00, "leav[ing] both parties with $2032.85 per month to support themselves." Judge Ryan denied both parties' requests for attorneys' fees.[2]

¶5         Burl timely appealed.[3] We have jurisdiction pursuant to A.R.S. § 12-2101(A)(1) (Supp. 2013).

---

[2] In denying both requests for attorneys' fees, Judge Ryan found that although Burl had been reasonable in seeking a downward modification of the spousal maintenance payments, his request to terminate spousal maintenance altogether had been unreasonable. Judge Ryan also found that Diane had been unreasonable in her efforts to continue to receive $1500.00 per month after this court's opinion reversing Judge Hicks's order.

[3] Diane also filed a notice of appeal but did not pay a filing fee and this court dismissed her appeal in February 2015.

**DISCUSSION**

¶6        Burl raises two issues on appeal:  1) whether Judge Ryan erred by relying on Judge Hicks's findings after remand, and 2) whether Judge Ryan erred by attributing to him $948.00 per month of minimum wage income.

## A.  Judge Hicks's Findings

¶7        In our 2014 opinion in this case, we ruled that the trial court should not have considered Burl's Title 38 disability benefits in calculating the spousal maintenance award.  *Swain*, 235 Ariz. at 211, ¶ 8, 330 P.3d at 968.  Accordingly, we vacated the decision and "remanded [the matter] to the family court for further proceedings consistent with this opinion."  *Id.* at ¶ 9.  Burl argues that the trial court should have treated Judge Hicks's vacated order "as voided and as if it never existed."  He asserts that Judge Ryan therefore erred by relying on any of Judge Hicks's findings.  We disagree.

¶8        Burl cites *Nielson v. Patterson*, 204 Ariz. 530, 65 P.3d 911 (2003) as authority for his argument that Judge Ryan could not rely on Judge Hicks's findings. *Nielson* does not apply here. In *Nielson*, our supreme court held that the defendants did not need to preserve their challenge to the underlying judgment by filing a protective cross-appeal because a trial court order granting a new trial vacated the original entry of judgment. *Id.* at 531, ¶¶ 2-4, 534, ¶ 15, 65 P.3d at 912, 915.  The *Nielson* court further held that when the appellate court reversed the trial court's order granting a new trial and ordered the trial court to reinstate the judgment, the time to appeal the underlying judgment ran from the date the judgment was reinstated. In this case, we directed the trial court to conduct further proceedings consistent with our opinion which held that the trial court could not include Burl's Title 38 benefits in determining the award for spousal maintenance. The court did so and did not deviate from what it was instructed to do.  *See Bogard v. Cannon & Wendt Elec. Co.*, 221 Ariz. 325, 334, ¶¶ 30-32, 212 P.3d 17, 26 (App. 2009).  We did not require the court to discount the prior evidence or findings made by the court which were not erroneous, including Judge Hicks's finding that Burl could be attributed minimum wage income of thirty hours a week.  *See Swain*, 235 Ariz. 209, 330 P.3d 966.  As further discussed below, the record supported the court's finding on attributed income.  Accordingly, we find no error.

### B. Attributed Income

**¶9**      We review de novo the trial court's attribution of income to Burl because it is an issue of law. *See Pullen v. Pullen*, 223 Ariz. 293, 295, ¶ 9, 222 P.3d 909, 911 (App. 2009) (citations omitted). "Questions of what factors to apply to attribute income are legal questions . . . [h]owever, whether the trial court properly applied those factors is reviewed deferentially." *Id.* (citations omitted). Whether sufficient evidence supported the court's application of the test for attributing greater income to a party is reviewed for clear error. *Id.* at 296, ¶ 9, 222 P.3d at 912 (citing *Kelsey v. Kelsey*, 186 Ariz. 49, 51, 918 P.2d 1067, 1069 (App. 1996)).

**¶10**      In *Pullen*, we set out a balancing test for courts to use in determining whether to use actual income or earning capacity to calculate spousal maintenance when voluntary reduction of income issues are raised. 223 Ariz. at 297-98, ¶ 18, 222 P.3d at 913-14. The *Pullen* court set out five factors for the trial court to balance in addition to other evidence:

1. The reasons asserted by the party whose conduct is at issue;

2. The impact upon the obligee of considering the actual earnings of the obligor;

3. When the obligee's conduct is at issue, the impact upon the obligor of considering the actual earnings of the obligee and thereby reducing the obligor's financial contribution to the support order at issue;

4. Whether the party complaining of a voluntary reduction in income acquiesced in the conduct of the other party; and

5. The timing of the action in question in relation to the entering of a decree or the execution of a written agreement between the parties.

*Id.* at 297, ¶ 15, 222 P.3d at 913.

**¶11**      The record supports the trial court's conclusion that it could use earning capacity (albeit a very limited earning capacity) to calculate spousal maintenance in this case. The trial court considered Burl's

testimony that he had not worked since 2013 and that his disabilities prohibited him from earning any income (factor one).[4]   The court considered Diane's testimony that she would lose her home if the spousal maintenance award was reduced from $1500.00 per month (factor two). Factors three and five do not apply here.  As to the fourth factor, the record reflects that Diane did not acquiesce to Burl's voluntary reduction of income.  We find no error.

¶12        Burl argues that the trial court erred by attributing income to him because he retired in good faith.  *See Chaney v. Chaney*, 145 Ariz. 23, 27, 699 P.2d 398, 402 (App. 1985) (in deciding whether retirement is a substantial change in circumstances which would allow modification of an award for spousal maintenance the court looks at 1) the age of the obligor, 2) the voluntariness of the obligor's retirement, and 3) whether the obligor is retiring in good faith).  In 2013, Burl testified that he wanted to work until he was seventy years old.  After this court vacated Judge Hicks' ruling and the case returned to the trial court for further proceedings, Burl changed his position and testified that he was not able to work.  Given the trial court's decision to attribute income and its explicit statement that Burl had not met his burden of proof on this issue, the court necessarily rejected Burl's testimony, and on the entire record presented to the trial court, we cannot say it abused its discretion in doing so.

¶13        Burl further argues that the trial court's attribution of income to him violates *Leathers v. Leathers*, 216 Ariz. 374, 166 P.3d 929 (App. 2007). He argues that under *Leathers*, a court "cannot award spousal maintenance such that the recipient ends up in a better financial situation tha[n] the payor."  *Leathers* does not stand for this proposition, nor does Burl cite authority that does.  Accordingly, we find no abuse of discretion.

¶14        Because the trial court correctly considered the A.R.S. § 25-319(B) factors in awarding Diane spousal maintenance and did not clearly

---

[4] Although Burl testified at the August 2014 hearing that he was not doing any handyman work, and he denied having painted his girlfriend's home (where he lived and was paying less than half of the expenses), his bank statements from the previous year showed charges at Lowes for hundreds of dollars each, plus charges at another hardware store.  We also note that Burl testified his monthly expenses included $200-$300 in charitable contributions.

err by attributing to Burl $948.00 per month of minimum wage income, we affirm the decision of the trial court.

### C. Attorneys' Fees and Costs

**¶15**     Diane requests her attorneys' fees pursuant to A.R.S. § 25-324 (Supp. 2013).  An award of attorneys' fees under section 25-324 may either be based upon the financial resources of the parties or the reasonableness of the positions taken in the litigation.  After consideration of these factors, we award Diane attorneys' fees and costs on appeal in an amount to be determined upon compliance with Rule 21(b) of the Arizona Rules of Civil Appellate Procedure.



Ruth A. Willingham · Clerk of the Court
F I L E D : ama